UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| CARLOS ESCOBAR, | Case No. 2-10-cv-01973-KJD-NJK |
| Petitioner, | ORDER |
| v. | |
| BRIAN E. WILLIAMS, *et al.*, | |
| Respondents. | |

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Carlos Escobar, a Nevada prisoner. ECF No. 11.

I. BACKGROUND[1]

Escobar was convicted in the state district court for Clark County, Nevada, of discharge of a firearm at or into a vehicle (count I), attempted murder with the use of a deadly weapon (count II), and first-degree murder with the use of a deadly weapon (count III). At trial, the State presented evidence that, on September 28, 1995, Escobar got into a heated argument with Wilfredo Sanchez that culminated in Escobar taking a handgun from his companion Carlos Cruz's waistband and shooting Sanchez four times, but not killing him. The State's evidence further established that Escobar fired several shots into a van parked nearby, killing one of its occupants, Daniel Arreguin.[2]

On November 12, 1998, the court sentenced Escobar to 16-72 months on count I, 53-240 months on count II, plus an equal and consecutive sentence of 53-240 months

---

[1] This procedural background is derived from the exhibits located at ECF Nos. 12-17, 50, and 56, and from this court's own docket entries.

[2] At the same trial, Escobar was also charged with the murder of Francisco Cabral, which occurred on October 17, 1995. The jury found Escobar not guilty on that charge.

for the enhancement on count II (to run concurrently with count I), and life without the possibility of parole, plus an equal and consecutive sentence of life without the possibility of parole for the enhancement on count III (to run consecutively to count II). A judgment of conviction was entered on December 2, 1998. Escobar appealed. On August 11, 2000, the Nevada Supreme Court affirmed the judgment of the district court.

On November 14, 2000, Escobar filed a proper person state habeas petition in the state district court. After appointed counsel delayed in filing a supplemental state habeas petition, Escobar filed a proper person petition for writ of mandamus with the Nevada Supreme Court. The court granted the petition, ordering the state district court to appoint new habeas counsel. Following appointment of new counsel, Escobar filed a supplemental brief in support of writ of habeas corpus on November 5, 2007, and an amended supplemental brief on December 3, 2007.

Following a hearing in the state district court, the court denied the state habeas petitions. Escobar appealed. On September 29, 2010, the Nevada Supreme Court affirmed.

Escobar then initiated this proceeding in November 2010. Having been appointed counsel, Escobar filed an amended petition for writ of habeas corpus on October 27, 2011.

On February 19, 2013, this court granted, in part, respondents' motion to dismiss claims in that petition, finding Ground One to be procedurally barred and finding Grounds Two, Three, Four, Five, Six, and Ten to be unexhausted. The court subsequently granted Escobar's motion for stay and abeyance to allow him to exhaust state court remedies for the unexhausted claims.

On April 19, 2013, Escobar filed his second state habeas petition. The state district court denied the petition, finding the petition untimely pursuant to Nev. Rev. Stat. § 34.726, second and successive pursuant to Nev. Rev. Stat. § 34.810, and barred by laches pursuant to Nev. Rev. Stat. § 34.800. On September 16, 2014, the Nevada Supreme Court affirmed the denial of the second state habeas petition, imposing both

§ 34.726 and § 34.810. The court also found that Escobar failed to demonstrate cause and prejudice to overcome the procedural bars.

On January 8, 2015, this court granted Escobar's motion to reopen this federal action. Respondents then moved to dismiss Grounds Two, Three, Four, Five, Six, and Ten of Escobar's amended federal petition as procedurally defaulted. This court granted respondents' motion as to Grounds Two, Four, and Five, but reserved judgment as to Grounds Three, Six, and Ten, pending a determination whether petitioner's defaults should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012).

Grounds Three, Six, Seven, Eight, Nine, and Ten have been fully briefed and are before the court for decision.

II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than

applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

III.  DISCUSSION[3]

*Ground Seven*

In Ground Seven, Escobar claims that his constitutional right to confront witnesses against him was violated when the trial court denied admission of a statement written by defense witness Giorgianna Arellano. Arellano, the manager of an apartment complex in California, was called by the State as a rebuttal witness and testified that Escobar had visited his sister at the complex, but had never lived there. ECF No. 15-19, p. 62-70.[4] On cross-examination, Escobar's counsel impeached her testimony with her prior written statement on a photo lineup form that identified Escobar as a previous resident who lived with his sister. *Id.*, p. 73-77.

When defense moved to admit the photo lineup form, the court sustained the State's objection to its admission. Id., p. 77-78. Following additional argument on the issue, the trial court confirmed its ruling, stating as follows:

> Well, whether alibi or not, the witness testified she did, in fact, make the statement. The witness testified that that is how she, in fact, filled it out. The witness testified later that on rethought that was incorrect. So the jury has all that before them. So with her having testified, the Court saw and sees no reason for its admission. The record has been made.

*Id.*, p. 83.

Escobar argued to the Nevada Supreme Court on direct appeal that the trial court's ruling violated his rights under the Confrontation Clause of the Sixth and Fourteenth Amendments. ECF No. 16-10, p. 29-32. The Nevada Supreme Court addressed the claim as follows:

> Escobar next contends that the district court committed reversible error by refusing evidence of a written prior inconsistent statement of a rebuttal witness called to testify by the State.

---

[3] The court addresses Escobar's ineffective assistance of counsel claims together after addressing his other three claims. For that reason, the discussion of Escobar's claims is not in numerical order.

[4] Page number citations for ECF documents are based on CM/ECF pagination.

5

1    Giorgianna Arellano was the apartment manager of a Los Angeles apartment complex where Escobar's sister resided. She was called as a rebuttal witness by the State to contradict testimony by Escobar that he left Las Vegas to reside in California with his sister just after the shooting.

When questioned by a district attorney's investigator about Escobar, Arellano was shown a photographic line-up and identified Escobar as an individual she had seen within the apartment complex. Arellano also gave a written statement on which she wrote, "number 5A is the only picture that looks familiar to me. It looks like a previous resident that lived with his sister." At trial, however, Arellano testified that her printed statement was incorrect and that she had intended to convey that Escobar used to visit relatives residing in the apartment complex.

Escobar attempted to admit Arellano's printed statement into evidence. The State objected on the grounds that "it would over emphasize her testimony, and she's already explained her testimony and already described what she said in the statement." The district court sustained the State's objection.

According to Escobar, the failure to admit the printed statement was contrary to the language of NRS 51.032(2)(a)[1] and violated his rights under the Confrontation Clause of the Sixth and Fourteenth Amendments of the United States Constitution.

The determination of whether to admit evidence is within the sound discretion of the district court, and that determination will not be disturbed unless manifestly wrong. *See Petrocelli v. State*, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). Pursuant to NRS 51.035(2)(a), a prior inconsistent statement may be admissible for both substantive and impeachment purposes when the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is inconsistent with his testimony.

We conclude that the district court did not err in failing to admit the written statement. Although there was no compelling reason to reject admissibility of the written statement, failure to formally admit it into evidence did not prejudice Escobar. First, the statement would not have served to exculpate him; second, the jury was made fully aware of the inconsistencies through oral examination of the witness by Escobar's counsel. *See Miranda v. State*, 101 Nev. 562, 567, 707 P.2d 1121, 1124 (1985). Moreover, whether Escobar continuously lived in California subsequent to the shooting was wholly a collateral matter.

---

[1] NRS 51.035(2)(a) provides that a statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with his testimony.

ECF No. 16-15, p. 3-5.

The Confrontation Clause of the Sixth Amendment guarantees defendants the opportunity to cross-examine the prosecution's witnesses. *Delaware v. Van Arsdall*, 475

U.S. 673, 678 (1986). Defendants are not, however, entitled to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). In *Fowler v. Sacramento Cty. Sheriff's Dep't*, the Ninth Circuit used the following approach to determine if the trial court's limitation on a defendant's right to cross-examination was an objectively unreasonable application of federal law:

> We consider first whether the proffered cross-examination sufficiently bore upon [the witness's] reliability or credibility such that a jury might reasonably have questioned it, and, if so, whether the trial court's preclusion of this cross-examination was unreasonable, arbitrary or disproportionate given its concerns about waste of time, confusion and prejudice.

421 F.3d 1027, 1038 (9th Cir. 2005).

Here, Arellano's written statement arguably bore upon her reliability or credibility such that a jury might have reasonably relied up on it to question it. However, because defense counsel was permitted to refer to the statement in cross-examining Arellano, admitting the statement into evidence would have had only marginal impeachment effect. And, in any case, the trial court's exclusion of the statement was not unreasonable, arbitrary, or disproportionate to legitimate concerns. Even if the statement was not excludable as hearsay, the trial court reasonably concluded that it was cumulative. Thus, exclusion of the written statement was not an objectively unreasonable application of federal law.

In addition, violations of the Confrontation Clause are trial errors subject to harmless-error analysis. *Van Arsdall*, 475 U.S. at 684. If the error did not result in "actual prejudice," the writ should not issue. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (adopting standard of *Kotteakos v. United States*, 328 U.S. 750 (1946)). "Actual prejudice" is demonstrated if the error in question had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623. It was not disputed at trial that Escobar was present during the Arreguin/Sanchez shooting. Arellano's testimony bore

only upon whether he was present for the Cabral murder, for which he was acquitted. Thus, any error arising from the exclusion of Arellano's written statement was harmless.

Ground Seven is denied.

*Ground Eight*

In Ground Eight, Escobar claims that his constitutional rights to due process and trial before an impartial jury were violated because the reasonable doubt instruction issued by the court combined with the prosecutor's comments in closing argument improperly minimized the State's burden of proof. The instruction at issue read, in part, as follows:

> A reasonable doubt is one based on reason. It is not a mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.

ECF No. 15-22, p. 39.

The comments by the prosecutor Escobar relies upon in making this claim are as follows:

> And let's talk about reasonable doubt. That instruction is, basically, the foundation for the criminal justice system. And you have to take this into consideration of the history of our country. You can go back during the foment of trying to break away and form our own country. That was started and those principles were eventually developed and flourished as a result of everyday people. You know, the candlestick makers, cobblers, ranchers, farmers, ship builders, everyday people talking about the problems of the day. That's why the jury system is so important, because that's what you are, in your various areas. You have all different experiences. But guess what, the same principle was good then, the same principle is good now. And it lasts through this reasonable doubt instruction.
>
> But it is not something to be feared. In this instruction it says, 37, it says the Defendant is presumed innocent until the contrary is proved. Well the defendant has been stripped of his innocence at this point with the evidence you have. The instruction goes on. It says this presumption places upon the State the burden of proving beyond a reasonable doubt -- reasonable doubt, remember that word - - everything material element -- the other principle we're talking about -- of the crime charged and that the Defendant is the person who committed the offense.
>
> See how important that is. But you shouldn't be intimidated, because it goes on and explains to you a reasonable doubt is one based

8

on reason. Now that's a silly statement taken by itself. It's redundant. Now why would that sentence be there? It's there because it's emphasizing the word reasonable. A reasonable doubt is one based on reason. It is not mere possible doubt that is such a doubt -- okay, excuse me. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. Well what are some of the more weighty affairs of life that you've had? We've talked about some of this.

What have you done? You've made decisions. Now, is it moving, buying a house, not if you're a realtor. That's not one of the more weighty affairs of life. But if you put your time and money into it and you're buying your one-time house and it's taken you years and you've finally gotten to it. But of course you don't have years here, but you made that decision and you've been able to make that decision, whoever it may be. Is it getting married? Maybe. Not for Johnny Carson. He's been married too many times. But for that commitment, that's what they're talking about.

But every one of you has something different in you where you've made that decision, whatever it may be, where you've committed. It's not something, when somebody mentioned here when we were going through jury selection, beyond any doubt or beyond a shadow of doubt. None of those words are in here. It's beyond a reasonable doubt. You see, it's something you can handle, because you're all reasonable people. That's what's important here. It's nothing that's out of your grasp. It's something you can handle. It's nothing to be feared, It's something to be cherished.

ECF No. 15-20, p. 54-55.

Escobar argued to the Nevada Supreme Court on direct appeal that the prosecutor's comments quantifying reasonable doubt constituted reversible error. ECF No. 16-10, p. 32-35. The Nevada Supreme Court addressed the claim as follows:

Lastly, Escobar asserts that the State improperly quantified the reasonable doubt instruction, which admonishes that "[a] reasonable doubt is one based on reason. . . . It is not a mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life." The State then went on to discuss the decision to buy a house or marry.

These comments were improper in light of our decision in *Holmes v. State*, 114 Nev. 1357, 1366, 972 P.2d 337, 343 (1998) (holding that prosecutorial commentary analogizing reasonable doubt with major life decisions is improper).[2] We conclude, however, that any error was cured by the reasonable doubt instruction, which complied with NRS 175.211.[3] *See Lord v. State*, 107 Nev. 28, 35, 806 P.2d 548, 552 (1991).

---

[2] We note that the *Holmes* decision was rendered subsequent to the time that the comments at issue in this case were made.

[3] We further note that Escobar failed to object to the State's comments at trial, and therefore, did not properly preserve the issue for appeal. *See Sterling v. State*, 108 Nev. 391, 394, 834 P.2d 400,

9

|  | 402 (1992). However, we have chosen to address the matter on its merits. |

ECF No. 16-15, p. 5.

To prevail on a claim of prosecutorial misconduct in a habeas action, a petitioner must show that the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Greer v. Miller*, 483 U.S. 756, 765 (1987). A challenged statement by the prosecutor must be evaluated in the context of the entire trial, as well as the context in which it was made. *See Boyde v. California*, 494 U.S. 370, 384–85 (1990). Misstatements of the law by prosecutors in closing argument "are not to be judged as having the same force as an instruction from the court." *Allen v. Woodford*, 395 F.3d 979, 1010 (9th Cir. 2005) (quoting *Boyde*, 494 U.S. at 384–85). And, even if a prosecutor's conduct amounts to constitutional error, habeas relief will be granted only if petitioner can establish that the alleged error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 638; *see also Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir.1995) (no prejudice from prosecutorial misconduct because it could not have had a substantial impact on the verdict under *Brecht*).

In this court's view, the comments at issue were more confusing than misleading. It must be presumed that the jury placed more emphasis on the court's jury instructions than it did on the prosecutor's somewhat-rambling argument. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). In addition to the reasonable doubt instruction excerpted above, the jury was also instructed that, regardless of what counsel may say in argument, the jury's deliberations were to be governed by the evidence presented and the law as presented in the court's instructions. ECF No. 15-22, p. 50.

10

Under the circumstances presented here, the Nevada Supreme Court's conclusion that the prosecutor's argument, while improper, was cured by the trial court's reasonable doubt instruction was not contrary to or an unreasonable application of federal law. Moreover, any prosecutorial misconduct did not have a significant impact on the jury's verdicts in light of the unrefuted evidence that Escobar shot Sanchez and Arreguin and the wealth of evidence that he was not acting in self-defense or in defense of others. Accordingly, Escobar is not entitled to relief on this claim.

Ground Eight is denied.

*Ground Nine*

In Ground Nine, Escobar claims his conviction and sentence violated his constitutional rights because he offered evidence at trial that he acted in self-defense and the State did not prove beyond a reasonable doubt that he did not act in self-defense or in defense of others. In support of the claim, Escobar alleges that the State's witnesses gave conflicting testimony with respect to the shooting, while his own testimony showing self-defense was consistent with much of the testimony of the State's witnesses.

Escobar presented this claim to the Nevada Supreme Court on direct appeal. ECF No. 16-10, p. 23-28. The Nevada Supreme Court addressed the claim as follows:

> Escobar contends that the State failed to meet its burden of proving that Escobar did not act in self-defense or in the defense of others.
>
> The standard of review for sufficiency of the evidence is "whether the jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt." *Kazalyn v. State*, 108 Nev. 67, 70, 825 P.2d 578, 581 (1992). Where there is sufficient evidence in the record to support the verdict, it will not be overturned on appeal. *Id*.
>
> Here, several witnesses testified that Escobar chased and shot at Sanchez, and that Sanchez was unarmed. Physical evidence at the crime scene further supports the jury's findings, including the pattern of the shell casings on the ground and evidence that the shell casings had all been fired from the gun used by Escobar. Although the evidence on the question of self-defense was in conflict, it was up to the jury to weigh the credibility of the witnesses and the probative value of their testimony. *See Stewart v. State*, 94 Nev. 378, 379, 580 P.2d 473, 473 (1978) (citing *Hankins v. State*, 91 Nev. 477, 530 P.2d 167, 168 (1975)). Accordingly, we conclude that there is sufficient evidence to support Escobar's conviction.

11

ECF No. 16-15, p. 2-3.

The state court record supports each of the factual determinations by the Nevada Supreme Court. Specifically, four eyewitnesses (Rocky Perez, Cruz, Sanchez, and Jorge Gomez) each testified that Escobar shot at and/or chased Sanchez, who was unarmed. ECF No.12-18, p. 71-72; ECF No. 15-14, p. 23-25, 66-68; ECF No. 15-16, p. 80-83. None of these witnesses (or any witness other than Escobar) testified to facts indicating that Escobar shot at Sanchez to protect himself or others from bodily harm. Brent Becker, a homicide detective who processed the crime scene, testified that all the spent shell casings found at scene were nine millimeter. ECF No. 15-16, p. 22-27. Torrey Johnson, a police firearms analyst, testified that all the casings were fired from the same Glock semiautomatic pistol (i.e., the gun used by Escobar). ECF No. 15-17, p. 69-71. Thus, it cannot be said that the Nevada Supreme Court's decision was based on an unreasonable determination of the facts for the purposes of § 2254(d)(2).

In addition, the decision was not "contrary to" clearly established U.S. Supreme Court precedent. The "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), is the federal law standard to test whether sufficient evidence supports a state conviction. *See Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). While the Nevada Supreme Court cited to state case law in deciding Escobar's sufficiency of evidence claim, neither the reasoning nor the result of its decision contradicts *Jackson* or any other Supreme Court case. *See Early v. Packer*, 537 U.S. 3, 8, (2002) (holding that state decision does not require citation (or even awareness) of U.S. Supreme Court cases to avoid the "contrary to" clause of § 2254(d)(1), "so long as neither the reasoning nor the result of the state-court decision contradicts them.").

And because this court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this court "think[s] the state court made a mistake," the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id.*

This court cannot conclude that the state court determination was unreasonable. There was sufficient evidence from which a rational trier could find beyond a reasonable doubt that Escobar did not act in self-defense or in defense of others when he shot Sanchez and Arreguin.

Ground Nine is denied.

*Grounds Three, Six, and Ten*

Grounds Three, Six, and Ten are all claims that Escobar was deprived of effective assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments. As noted above, these claims are procedurally defaulted. Escobar argues, however, that the defaults should be excused based on the holding in *Martinez v. Ryan*, 566 U.S. 1 (2012). Under *Martinez*, a petitioner may establish cause for the procedural default of an ineffective assistance of trial counsel claim "by demonstrating two things: (1) 'counsel in the initial review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668 (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14).

To establish a claim of ineffective assistance of counsel (IAC) under *Strickland*, a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable."

13

*Id.* at 687. Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In Ground Three, Escobar claims his trial counsel were ineffective because they failed to retain an expert to rebut the State's argument that the number of shots he fired during the incident proved that he acted with premeditation and deliberation. He alleges that a qualified expert could have explained to the jury that, due to the heated state of affairs immediately prior to the shooting, Escobar did not have the ability to deliberate his actions. He further alleges that, in all likelihood, he suffered from post-traumatic stress disorder (PTSD) due to his tumultuous and violent upbringing in El Salvador during a civil war. He proffers the opinion of a neuropsychologist, Jonathan Mack, Psy.D., to support his claim. ECF No. 17-41.

Ground Three is without merit. Dr. Mack's opinion as to Escobar's lack of intent is premised on the theory that Escobar actions were a "highly reactive" and "impulsive" response to being confronted by "opposing gang members." ECF No. 17-41, p. 6. The problem with that theory is the record shows that Escobar was primarily responsible for the "heated state of affairs." That is, aside from Escobar's self-serving testimony, the evidence shows that Escobar started the argument with Sanchez or that it was mutual, and that Escobar was one who escalated the argument into actual violence by shooting at Sanchez, who was unarmed. ECF No.12-18, p. 70-72; ECF No. 15-14, p. 23-25, 65-68; ECF No. 15-16, p. 80-83. There is no evidence that any of Sanchez's associates confronted or threatened Escobar. In addition, Escobar admitted in his testimony at trial that he intended to kill Sanchez when he shot at him numerous times. ECF No. 15-19, p. 30.

In Ground Six, Escobar claims his trial counsel were ineffective because they failed to move for the exclusion of Rocky Perez's preliminary hearing testimony once it was discovered that it was inherently unreliable.

In a voluntary statement given to the police a little over a month after the incident, Perez stated that, during the argument between Escobar and Sanchez, Sanchez pulled out his gun, at which point Escobar grabbed the gun from Cruz's waistband and began firing. ECF No. 17-44, p. 8-12. At Escobar's preliminary hearing a year and half later, Perez testified that, on the night of the incident, Escobar and Wilfredo Sanchez began arguing and Sanchez yelled out for his "homies" to get out of the van and that someone in the van showed a gun, at which point Escobar "pulled the gun and started firing." ECF No. 12-18, p. 71. He further testified that, after shooting at Sanchez, Escobar went over to the van and shot Arreguin, who was unarmed. *Id.*, p. 72. Later in his testimony, he clarified that the gun in the van had nothing to do with the shooting and it was not being pointed at anyone. Id., p. 105. He also denied that Sanchez ever had a gun. *Id.*, p. 94.

Several months prior to trial, defense counsel learned that the State considered Rocky Perez an unavailable witness. Counsel filed a motion to preclude the State from introducing Perez's preliminary hearing testimony at trial without holding a hearing to determine whether he was truly unavailable.[5] ECF No. 14-10. During Escobar's trial, the court canvassed Perez outside the presence of the jury to determine whether he would refuse to testify even if ordered by the court. ECF No. 15-14, p. 97-112. The court subsequently found Perez to be an unavailable witness and allowed his prior testimony to be read to the jury. *Id.*, p. 112.

At one point during the canvass, the following exchange occurred:

> Prosecutor: Mr. Perez, did you tell the truth back on May 23rd, 1997, when you first testified for the State? Did you tell the truth back then?
>
> Perez: Not really.

---

[5] Nev. Rev. Stat. § 171.198 allows for the presentation of prior recorded testimony by the state where the defendant was represented by counsel and "the witness is sick, out of the State, dead, or persistent in refusing to testify despite an order of the judge to do so, or when his personal attendance cannot be had in court."

15

> Prosecutor: Not really. You were under oath back then are you saying that you lied back there? Did you testify that Carlos Escobar shot Daniel Arreguin?
>
> Perez: I say that, yeah, he shot –
>
> The Court: [Defense counsel].
>
> Defense counsel: Your Honor, I think we're in a difficult position. [The prosecutor's] questions to him under oath would amount to him admitting that he committed the crime of perjury, I'm not sure this is real appropriate.

*Id.*, p. 109. The prosecutor posed no further questions to Perez. *Id.*

Escobar claims that effective counsel would have moved for exclusion of Perez's testimony on the ground that Perez admitted that it was not truthful. He further claims that effective counsel would not have interrupted as the prosecutor began to delve into Perez's untruthfulness. In the alternative, Escobar claims that effective counsel would have asked the court to instruct the jury that Perez admitted his testimony was not truthful.

The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. Because Escobar's conviction became final prior to *Crawford v. Washington*, 541 U.S. 36 (2004), the applicable standard for this claim is set forth in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). *See Whorton v. Bockting*, 549 U.S. 406, 421 (2007). In *Roberts*, the Court held that the admission of hearsay statements against a criminal defendant is constitutionally permissible so long as the speaker is unavailable and the statements bear adequate indicia of reliability, either falling within a "firmly rooted hearsay exception" or containing "particularized guarantees of trustworthiness." 448 U.S. at 66.

The *Roberts* Court concluded that the witness's prior testimony at a preliminary hearing bore sufficient "indicia of reliability" given that defense counsel's questioning of the witness comported with the form and purpose of cross-examination. *Id.* at 70-71.

With respect of the unavailability of the witness, the Court held "the ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Id.* at 74-75.

Here, as in *Roberts*, defense counsel at the preliminary hearing engaged in a significant cross examination that was "replete with leading questions" and challenged whether Perez was "sincerely telling what he believed to be the truth." ECF No. 12-18, p. 84-99, 105-08. *See Roberts*, 448 U.S. at 70-71. Also, the record amply supports the trial court's finding as to Perez's unwillingness to testify irrespective of any court order to do so. ECF No. 15-14, p. 97-112. Refusal to testify under such circumstances is a well-established ground for unavailability under both Nevada evidence law, Nev. Rev. Stat. § 51.055, and under the Federal Rules of Evidence, Fed. R. Evid. 804(a)(2).

Against this backdrop, this court is unable to discern how Escobar's counsel could have prevailed upon the trial court to exclude Perez's preliminary hearing testimony. Escobar points to no grounds, other than the Confrontation Clause, upon which to exclude the testimony. Moreover, Perez's admission as to the untruthfulness of the testimony was vague and did not identify which part was inaccurate. *See Zapien v. Davis*, 849 F.3d 787, 793-94 (9th Cir. 2015) (admission of petitioner's sister's preliminary hearing testimony did not violate petitioner's right to confrontation, even though government knew that sister had told lies during other parts of her preliminary hearing testimony, where sister refused to testify at trial, and preliminary hearing testimony fell within heartland of those statements deemed reliable under *Ohio v. Roberts*, 448 U.S. 56 (1980)).

In addition, it appears from the record that defense counsel made a reasoned decision to not oppose the admission of the preliminary hearing transcript once it was decided that Perez met the criteria for finding him unavailable. Clearly, counsel's preference was for Perez to testify in person at trial. ECF No. 15-14, p. 108-09. Barring that, however, counsel preferred admission of the preliminary transcript in lieu of no

17

testimony whatsoever, provided that the entire transcript (including cross-examination) was presented. *Id.*, p. 111.

Other than Escobar's own testimony, Perez's preliminary hearing testimony was the only testimony from an eyewitness that was even remotely helpful to Escobar's defense. In addition to the testimony recounted above, Perez admitted on cross-examination that he had initially told the police that Sanchez pulled a gun on Escobar. ECF No. 12-18, p. 92-94. Moreover, defense counsel effectively challenged Perez's credibility in the preliminary hearing testimony that was read to the jury. Perez's testimony did not include any particularly damaging information that was not presented through the other eyewitnesses.

Based on the foregoing, Escobar's counsel was not ineffective by failing to move for the exclusion of Perez's preliminary testimony.

In Ground Ten, Escobar claims counsel were ineffective by not investigating witnesses "who could have shed further light on what actually happened the night in question, e.g., Vickie Jo Sanchez, Rosa Perez and Christina Sandoval." ECF No. 11, p. 50. According to Escobar, Rosa Perez, Rocky's mother, was standing nearby when the events occurred and Christina Sandoval, who helped Carlos Cruz file a bogus police report about his gun being stolen, could have discredited Cruz's testimony.

Vickie Jo Sanchez testified at Escobar's trial. ECF No. 15-14, p. 84-96. Her testimony included the following information. She was awoken by the sounds of gunshots on the night of September 28, 1995. *Id.*, p. 88. Before looking outside, she checked on her three children and called 911. *Id.*, p. 88-89. When she did look outside, she saw people getting out of a van, with at least one person with a gun in his hand. *Id.* She saw that person, who was injured, hand the gun to Rocky Perez. *Id.* p. 92, 94-95.

It is apparent from Sanchez's testimony that she did not see the shooting and that Escobar and Carlos Cruz had already left the scene by the time she looked outside. Based on other testimony presented at trial, the injured person she saw handing a gun to Rocky Perez was Jorge Gomez. ECF No. 15-16, p. 87-94. Escobar does not specify

or even suggest how defense counsel's failure to investigate Vickie Sanchez adversely impacted the defense's case.

Similarly, he does not indicate what information or testimony Rosa Perez could have provided to assist the defense. As for using Sandoval to impeach the testimony of Carlos Cruz, Cruz himself admitted on direct examination that he lied to police about his gun being stolen. ECF No. 15-14, p. 26-27. Escobar cites to no other facts the defense could have elicited from Sandoval to impeach Cruz's testimony. In addition, he does not identify any other witnesses counsel should have investigated.

In summary, none of Escobar's IAC claims provide grounds for granting habeas relief in this case. Thus, even if the default of any of the claims might be excused under *Martinez*, the claims fail on the merits.

IV. CONCLUSION

For the reasons set forth above, Escobar is not entitled to habeas relief.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

The COA standard is not high. Escobar must only "'sho[w] that reasonable jurists could debate'" the district court's resolution or that the issues are "'adequate to deserve encouragement to proceed further.'" *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc) (citations omitted). Having reviewed its determinations and rulings in adjudicating Escobar's petition, the court concludes that the *Slack* standard is met with respect to the court's resolution of Ground Eight – Escobar's claim that his constitutional rights were violated because the reasonable doubt instruction issued by the court combined with the prosecutor's comments in closing argument improperly minimized the State's burden of proof.

The court therefore grants a COA as to that issue. The court declines to issue a COA for its resolution of any procedural issues or any of Escobar's other habeas claims.

**IT IS THEREFORE ORDERED** that petitioner's amended petition for writ of habeas corpus (ECF No. 11) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is granted as to the following issue:

> Whether this court erred in deciding that Escobar is not entitled to habeas relief based on his claim that the reasonable doubt instruction issued by the court combined with the prosecutor's comments in closing argument improperly minimized the State's burden of proof.

A COA is otherwise denied.

DATED July 10, 2018.

_____
UNITED STATES DISTRICT JUDGE